PETITION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

AO 243 (Rev. 2/95)

| | | |
|---|---|---|
| **UNITED STATES DISTRICT COURT** | District **MASSACHUSETTS** | |
| Name of Movant **JOSE MEDINA** | Prisoner No. **22539 038** | Case No. **99 10140** |
| Place of Confinement **FEDERAL MEDICAL CENTER   DEVENS** 11380 | 2004 AUG -6  P 12: 56 | |

UNITED STATES OF AMERICA

V. **JOSE MEDINA**

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack _____ **UNITED STATES DISTRICT COURT   DISTRICT OF MASSACHUSETTS        BOSTON MASSACHUSETTS**

2. Date of judgment of conviction   **AUGUST 9 2000**

3. Length of sentence _____ **121   MONTHS**

4. Nature of offense involved (all counts)   **CONSPIRACY TO DISTRIBUTE COCAINE,POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE,TWO COUNTS,DISTRIBUTION OF COCAINE,UNLAWFUL USE OF COMMUNICATION FACILITY**

5. What was your plea?  (Check one)
   (a) Not guilty   **X**      ☐ X
   (b) Guilty                 ☐
   (c) Nolo contendere        ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:
   **NOT APPLICABLE**

6. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a) Jury        ☐X
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☐X        No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒        No ☐

PETITION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

AO 243 (Rev. 2/95)

| UNITED STATES DISTRICT COURT | District **MASSACHUSETTS** | |
|---|---|---|
| Name of Movant **JOSE MEDINA** | Prisoner No. **22539 038** | Case No. **99 10140** |
| Place of Confinement **FEDERAL MEDICAL CENTER DEVENS** 11380 | | |

UNITED STATES OF AMERICA                     **JOSE MEDINA**

(name under which convicted)

### MOTION

1. Name and location of court which entered the judgment of conviction under attack   **UNITED STATES**

   **DISTRICT COURT  DISTRICT OF MASSACHUSETTS     BOSTON MASSACHUSETTS**

2. Date of judgment of conviction   **AUGUST 9 2000**

3. Length of sentence   **121  MONTHS**

4. Nature of offense involved (all counts)   **CONSPIRACY TO DISTRIBUTE COCAINE,POSSESSION OF COCAINE**

   **WITH INTENT TO DISTRIBUTE,TWO COUNTS,DISTRIBUTION OF COCAINE,UNLAWFUL USE OF**

   **COMMUNICATION FACILITY**

5. What was your plea?  (Check one)
   (a) Not guilty  **X**      ☐ **X**
   (b) Guilty                 ☐
   (c) Nolo contendere        ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

   **NOT APPLICABLE**

6. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a) Jury          ☐ **X**
   (b) Judge only    ☐

7. Did you testify at the trial?
   Yes ☐ **X**      No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒      No ☐

AO 243 (Rev. 2/95)

9.  If you did appeal, answer the following:

   (a) Name of court  UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

   (b) Result _____ JUDGMENT AFFIRMED

   (c) Date of result _____ AUGUST 27 2003

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
   Yes ☐      No ☒

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of court _____ NOT APPLICABLE

      (2) Nature of proceeding _____

      (3) Grounds raised _____

      (4) Did you receive an evidentiary hearing on your petition, application or motion?

         Yes ☐      No ☐

      (5) Result _____

      (6) Date of result _____

   (b) As to any second petition, application or motion give the same information:

      (1) Name of court _____

      (2) Nature of proceeding _____

      (3) Grounds raised _____

AO 243 (Rev. 2/95)

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐       No ☐

    (5) Result _____

    (6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
    (1) First petition, etc.        Yes ☐      No ☐
    (2) Second petition, etc.     Yes ☐      No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

    Caution:    <u>If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.</u>

    For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self−incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(h) Denial of right of appeal.

A.    Ground one: **INEFFECTICE ASSISTANCE OF COUNSEL AT SENTENCE**

Supporting FACTS (state *briefly* without citing cases or law)

**EXHIBIT A ATTACHED**

B.    Ground two: **SENTENCE WAS IMPOSED IN VIOLATION OF MY SIXTH AND FIFTH AMENDMENT RIGHTS**

**TO BE MADE AWARE OF ALL THE CHARGES AGAINST ME,TO HAVE ALL CHARGES PRESENTED TO A**

Supporting FACTS (state *briefly* without citing cases or law)
**JURY OF MY PEERS AND ESTABLISHED BEYOND A REASONABLE DOUBT AS SET FORTH BY THE**

**UNITED STATES SUPREME COURT IN THEIR APPRENDI AND BLAKELY DECISIONS.**

**SEE EXHIBIT B ANNEXED**

C.    Ground three: _____

Supporting FACTS (state *briefly* without citing cases or law)

AO 243 (Rev. 2/95)

D.    Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

~~THE CLARIFICATION OF THE APPRENDI RULES WERE NOT SET FORTH PREVIOUSLY AS IT~~

~~WAS JUST DECIDED IN JUNE.~~

_____

_____

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?
     Yes ☐         No ☐x̶

15.  Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

     (a)  At preliminary hearing _____

     (b)  At arraignment and plea _____

     (c)  At trial _____

     (d)  At sentencing   ~~PAUL J HALEY~~
                          460   WEST MAIN STREET
                          ~~HILLSBORO NEW HAMPSHIRE   03244~~

(6)

(e)  On appeal    RALPH J PERROTTA

163 ARNOLD AVENUE  CRANSTON, RHODE ISLAND  02905

(f)  In any post−conviction proceeding   NONE

(g)  On appeal from any adverse ruling in a post−conviction proceeding
NONE

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒       No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐       No ☒

(a)  If so, give name and location of court which imposed sentence to be served in the future:

(b)  Give date and length of the above sentence:

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐       No ☒

Wherefore, movant prays that the Court grant petitioner relief to which he or she may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

JULY 27 2004
(Date)

_____
JOSE MEDINA Signature of Movant

(7)

U S A V. JOSE MEDINA

EXHIBIT A      INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCE

I retained Paul S Haley,Esq. , who held himself out to be experienced and an
expert in the representation of defendants in the federal criminal justice
system,and in sentencing matters to represent me  in the sentence phase of
my trial.It is my claim that he provided totally ineffective assistance
at this stage of the proceedings which resulted in the imposition of a
significantly more severe sentence than would have been imposed if I had been
properly represented.A copy of the August 9,2000 "Disposition: transcript
is annesed as Exhibit C.Even a quick reading will demonstrate the total
unpreparedness and inassistance  of counsel at the hearing. This  issue was
raised in the brief submitted on my direct appeal,but the Circuit Court in a
footnote at page 14 of its opinion stated that ineffective assistance claims
must first be presented to and ruled upon by the District Court in an 18 USC 2255
motion before they will consider them.

It is my claim that his representation rose to the level of ineffectiveness
set forth in STRICKLAND V WASHINGTON ,466 U S 668 and that I amentitled
to relief. I annex a copy of that part of the brief submitted on my behalf to
the Court of Appeals as Exhibit D. I could not hope to present the issues as
well  as my appellate counsel did in the brief.

  As the transcript demonstrates the Probation Department,which is routinely
presumed .by the courts to have the expertise and experience to properly
analyle the facts and circumstances of criminal cases and to recommend
appropriate sanctions,reported that I should only be held responsible for
two sales,ie. 1 kilogram on 3/30 and 252 grams on 12/23. The government
objected and demanded that I be held responsible for a significantly large
weight of drugs sold on multiple occasions to Edward Giagiari (TR 3,4).
Mr. Giagiari had testified at my trial and mentioned only the two transactions
cited by the Probation Department in it P S I Report. The government based its

objections on a "debriefing report" of Mr. Giagiari which had not been presented

at trial in which he recited transactions in addition to those testified to at

trial. If he had testified to these transactions at trial I would have

been able to discredit these statements as patently false both on cross

examination and by the testimony of a third party.The Judge indicated that he

would accept the governments offer of proof but gave my attorney an opportunity

to require Mr. Giariari to testify and to be confronted if I challenged the

truth of the report(TR8).My attorney elected not to require his testimony (TR 9,10).

THis was a totally unexplainable and inexcusable error.It cannot be dismissed as

a trial tactic  since the court had stated that it would accept the statement as

true and proof of the other transactions.My only hope was to discredit this

witness which I believe that we could do since I was not in the area when some

of the claimed transactions took place.In any event I would be no worse off if

our cross examination failed to convince the Judge that the statement was a fabrication

designed  to win favor with the arresting officers and perhaps even prompted

by them.  Based upon his trial testimony Jose Vazquez,another witness that the

stated it had available in court,would have contradicted any transactions

reported in the debriefing which allsgedly involved him. My attorney  did not

require his testimony either.

     Given all the circumstances the sentence imposed should be vacated and corrected.

U S A V JOSE MEL .A

EXHIBIT B

## VIOLATIONS OF SIXTH AND FIFTH AMENDMENT PROTECTIONS

My constitutional rights pursuit to the sixth and fifth amendments to the
United States Constitution ie. to be advised of the charges against me,to have
any claimed criminal acts or ommissions presented to a jury of my peers to
determine guilt or innocence and to have any such charges establised beyond
a reasonable doubt – were all violated at the time of my trial and sentence. The
Supreme Court has recently reaffirmed these rights and made it clear that
the government must recognize these rights and meet its burdens or any sentence
pronounced in violation of these rights must be vacated and corrected. The
Apprendi and now the Blakely decisions of the Court make it clear that these
are basic liberty rights of all citizens that must be respected and protected.
I do not argue that the  Federal Sentence Guidelines are themselves unconstitutional.
Rather I claim that the method of implementation in arriving at my sentence
was unconstitutional in that the court increased my sentence based upon
statements contained in a debriefing interview of a government informant. This
person testified at trial and made no mention of the additional clsimed
trandactions during his testimony. I was therefore deprived of my reight to
confront and examine his as to these claimed transactions.No attempt was
made to have the jury make any determination as to the weight of the drugs
involved.At the time of sentence the court accepted this proffer  of the debriefing,
which probable also violated the Crawford   decisions and guidelines , and used
the significantly  increased claimed weight as the basis for my sentence which
significantly increased the term of my imprisonment.
My case was tried before a jury after Apprendi but—before Blakely  . The court
was therefore aware of the Supreme Courts dictates in APPRENDI and should have
disregarded the additional claims of transactions not testified to by the
witness at the time of trial.

U S A v. JOSE MEDINA

The sentence imposed should be vacated and corrected. Sentence should be imposed within the Guidelines in effect at the time of the alledged transactions based solely upon the weight of the  substances testified to at trial. Since the jury was not requested to make  a finding as to the weight of drugs involved beyond a reasonable doubt after hearing evidence  I also claim that the sentence should be reduced to the base level without any increase based upon the weight of the substances.

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * *
UNITED STATES OF AMERICA    *
                            *
          vs.               *      CRIMINAL ACTION
                            *      No. 99-10140-GAO
JOS  MEDINA                  *
OTONIEL MEDINA              *
                            *
* * * * * * * * * *.* * * * *
```

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE, and a jury
DISPOSITIONS
August 9, 2000


APPEARANCES:

UNITED STATES ATTORNEY'S OFFICE, (By Heidi Brieger
and John Wortmann, Assistant United States Attorneys),
One Courthouse Way, 9th Floor, Boston, Massachusetts
02210, on behalf of the government

LAW OFFICE OF PAUL J. HALEY, (By Paul J. Haley,
Esq.), 460 West Main Street, PO Box 1868, Hillsboro, New
Hampshire 03244, on behalf of Jose Medina

PAUL YEE, ESQ., 52 Temple Place, Boston,
Massachusetts 02111, on behalf of Otoniel Medina


                    Courtroom No. 3
                    1 Courthouse Way
                    Boston, Massachusetts 02210


         Jill K. Ruggieri, CSR, RPR, RMR, FCRR, CRR
                 Official Court Reporter
                    3510 Courthouse Way
               Boston, Massachusetts  02210
                    (617) 428-0011

Page 6

1  Mr. Giargiari was saying, which was that Mr. Medina had
2  large quantities of cocaine available at the other end of a
3  phone call.
4          THE COURT:  Did Mr. Giargiari testify at trial
5  to the quantities that are in the memo, all of them?
6          MS. BRIEGER:  I believe --
7          THE COURT:  In particular, for example, the --
8  set forth in Paragraph 3 and maybe Paragraph 4 as well.
9          MS. BRIEGER:  I don't think he did, your
10 Honor, because I think we offered testimony primarily
11 forward from December 9, although Mr. Giargiari did testify
12 that he had been a regular cocaine customer of Mr. Medina.
13         And, frankly, that is why Mr. Giargiari is here
14 today, because the government would propose to offer that
15 testimony and permit cross-examination or permit the Court
16 to examine him on that very issue.
17         I think it's appropriate in this case that simply
18 because the trial testimony doesn't reflect the
19 pre-December 9th purchases, that that not be subtracted out
20 of the sentencing calculation because that calculation is a
21 particularly important reflection of the scope of
22 Mr. Medina's drug trafficking.
23         THE COURT:  Is it the government's proffer
24 that if called to testify here today he would testify
25 consistently with the memorandum?

Page 7

1          MS. BRIEGER:  Absolutely.
2          THE COURT:  All right.
3          Mr. Haley.
4          MR. HALEY:  Your Honor, I would -- your Honor
5  was present for the trial testimony.  I believe
6  Mr. Giargiari testified that from the period between 1996
7  and December of 1998, that Jose Medina was around very
8  little, and there was other testimony that he was out of
9  state.  He was in Florida.
10         The trial evidence did not demonstrate any regular
11 practice with Mr. Giargiari, or that there was any
12 transactions -- specific transactions.
13         He also testified -- excuse me, your Honor.
14         He also stated on December 10 in an interview with
15 Detective Sergeant Slattery -- and it's in Sergeant
16 Slattery's report, and I refer to my memorandum on that,
17 your Honor -- that he purchased drugs on December 9 from a
18 person named Jay at Hoyts Theater in Westborough.
19         In addition, your Honor, there was other testimony
20 from a witness, Vazquez, whose testimony contradicted
21 Mr. Giargiari regarding drug amounts.
22         So I would say, your Honor, that based on the trial
23 testimony and even based -- the evidence should not be
24 considered by this Court at this time in determining the
25 calculations beyond what the Probation Department has

Page 8

1  calculated.
2          THE COURT:  Well, if the proposition is that
3  the sentencing hearing is limited to the evidence produced
4  at trial, I think that's wrong and I wouldn't so limit it.
5          The question is if that limit doesn't apply, is
6  there reason to reject the government's numerical
7  computation either because of the adequacy of the evidence
8  or otherwise.  And, in particular, there is an offer to call
9  the witness, and I guess if the government proffers it it,
10 in a sense, makes an offer of proof that that's what he
11 would say.
12         If you doubt it would come out that way on
13 examination, then we could call him and --
14         MR. HALEY:  No, your Honor.  I don't doubt
15 what he would say.  I don't doubt the offer of proof made by
16 the government.
17         What I'm saying is that offer of proof contradicts
18 what he's already testified to at the trial.  That's what
19 I'm suggesting.
20         THE COURT:  I see.
21         MR. HALEY:  And so on that basis, the
22 government fails in its burden, even by a preponderance of
23 the evidence, to a calculation other than that which was
24 calculated by the Probation Department.
25         THE COURT:  Ms. Brieger.

Page 9

1          MS. BRIEGER:  Your Honor, the only thing I can
2  add to that is that on Page 4 of the revised presentence
3  report is the original offense conduct that the government
4  submitted which puts into a little more detail the
5  quantities that Edward Giargiari said that he bought from
6  Jose Medina and it actually adds it up.  And by the end of
7  the March 30th transaction, it's, by my count, 4,466 or so
8  grams.
9          So the government has --
10         THE COURT:  You're referring to the numbers in
11 Paragraph 5 on Page 4?
12         MS. BRIEGER:  Correct, correct.
13         THE COURT:  Okay.
14         I'm going to sustain the government's objection to
15 the presentence report.  I think that the government
16 proposes an accurate computation and that the amount
17 attributed should be in excess of 4 kilograms.  I think
18 there is a substantial basis for that in the record that I
19 have, which includes the proffer by way of the --
20         I would note I do not think that there was a
21 substantial inconsistency in the testimony, the trial
22 testimony, with this report.  There was some generalized
23 consistency in that my recollection is that Giargiari
24 testified to an extended course of transactions in smaller
25 amounts than the ones that were actually in issue on some

Page 14

1  government's position, his maximum would have doubled. And
2  also, it's a $1 million fine. His maximum fine would have
3  doubled to 2 million. And with respect to the supervised
4  release, it's -- it would be at least three years or only
5  three years' supervised release.
6      That would be a punishment that would be increased
7  under the minimum mandatory section; and as I pointed out,
8  under C, there is no minimum mandatory.
9      So it does matter to Otoniel Medina if Apprendi or
10 Jones applied in this particular case.
11     The government does cite one Eighth Circuit case in
12 its brief that, if this Court doesn't sentence over the
13 20-year sentence, Apprendi does not apply. What I would
14 suggest to the Court on behalf of Mr. Medina is that that's
15 not the correct interpretation. The correct interpretation
16 would be that if his maximums were jacked up, Apprendi and
17 Jones would apply in this particular instance.
18     Also, Justice Thomas and Justice Stevens in the
19 Apprendi and the Jones case respectively have remarked in
20 concurring opinions that if the minimum mandatories were to
21 apply, then the government would be obligated as a matter of
22 constitutional law to allege an indictment, what the drug
23 quantity was, and also prove that drug quantity beyond a
24 reasonable doubt.
25     The government relies and there is some -- there is

Page 15

1  that open case of McMillan v. Pennsylvania that both briefs
2  allude to that permits a minimum mandatory within a certain
3  statutory range.
4      McMillan is different from this particular case.
5  The reason McMillan is different from this particular case
6  is that McMillan was a Pennsylvania state law. It's drafted
7  very, very differently than 841. In -- within that statute
8  it says that if a person is carrying a gun, it is a
9  sentencing factor, not an element.
10     And also, the Supreme Court seems to indicate in
11 Apprendi that, if called upon, the Supreme Court would
12 revisit McMillan because the holding in Apprendi is that any
13 sentencing fact other than a prior conviction must go to the
14 jury and be pled by the government.
15     So McMillan is what I suggest is a tenuous argument
16 for that. And also I think the way McMillan would be
17 applied to be consistent here, your Honor, is that -- say if
18 under 21, Section 841(b)(1)(C), if there were a minimum
19 mandatory sentence in that section of the law and then the
20 Court were to apply the minimum mandatory within the 20
21 years, I think then the government's argument would be
22 correct.
23     What the government is asking the Court to do is go
24 into another section of 841, and apply that part which has
25 increased minimums and maximums. And I would suggest that

Page 16

1  if we look at this drug law, 841, that really you have
2  separate, distinct crimes in (b) and (c).
3      And the reason I would suggest that to the Court is
4  that if you look at the two Supreme Court cases on the
5  federal statute, on the car-jacking and on the firearms, the
6  using a firearm in a crime of violence, the Court has
7  indicated that each of those statutes, even though it says
8  or could be interpreted that those are sentencing
9  enhancements, you read each of those as separate crimes and
10 it has to be played out separately.
11     So you have -- you have the Jones case and you also
12 have the Castillo cases that I cite in my memorandum
13 concerning the two federal statutes that the Supreme Court
14 has looked at, and in both those instances, the Supreme
15 Court says if you look at it, they're really separate
16 crimes.
17     And what I would suggest on behalf of Mr. Medina is
18 that (c) and (b) are separate crimes, just as in Castillo
19 and Jones.
20     So if -- and if the government doesn't specify
21 where it's really applying, then it ought to default to the
22 20-year part which is under 841(b)(1)(C), which is the
23 20-year.
24     You apply the 20 years; there's no minimum
25 mandatory. If the Court does find this 1 kilogram of

Page 17

1  cocaine by preponderance of the evidence and Mr. Medina
2  would be subject to a Level 26, without a minimum mandatory,
3  would be subject it a three-year supervised release, not a
4  four-year supervised release, as 841(b)(2) mandates.
5      The last issue I wish to address the Court on with
6  respect to the Apprendi/Jones issue is that the notice of
7  applicability in this case really is irrelevant.
8      With respect to notice of applicability, it's only
9  applicable to prior convictions under 21 USC 851(a), your
10 Honor.
11     And if the government wished to have an increase or
12 enhanced penalty, the government ought to give notice of the
13 prior convictions. And in there it doesn't even say if the
14 government wished to have increased penalties or
15 enhancement, that it must give the drug quantity. It only
16 talks about prior conviction.
17     So if you go back to Apprendi and Jones, even
18 though the government gave notice of applicability, which I
19 don't think is relevant here, it still doesn't pass muster
20 with Jones and Apprendi because it wasn't alleged. There
21 was no jury instruction, and it didn't go to the jury for
22 that increase/enhancement.
23     Just one moment your Honor.
24     (Pause in proceedings.)
25     MR. YEE: That, in summary, is the

Page 22

1   Simons was a general manager of a family-owned business
2   named Crazy Bob's that he ran with his father. And in that
3   particular case, this Court gave Mr. Simons a minus for
4   minimal participant.
5        So even though it's family and if it's part of some
6   alleged organization, that person can still get a minimal
7   participant role reduction.
8        And, in fact, Mr. William Simons in that case did.
9        I would suggest in this particular case, the trial
10  testimony, the trial evidence, would suggest that Mr. Medina
11  was at the periphery. He was there. Mr. Giargiari
12  testified -- and I annexed his testimony here -- that he was
13  present when Jose Medina delivered and sold drugs to
14  Mr. Giargiari, was there just talking to his brother.
15       He was asked directly by the government did he
16  recall any time when Otoniel Medina delivered drugs or sold
17  drugs to him. He says no.
18       So Mr. Medina, with respect to that, he was just
19  there.
20       With respect to Janine Soldicich, she testified
21  that there was extensive dealing with Jose Medina but that
22  Otoniel Medina was only four or five -- was there only four
23  or five times, and that's borne out by the portion of the
24  transcripts that I have annexed, your Honor.
25       He was not a person that was an integral part of

Page 23

1   this so-called conspiracy. He was on the periphery. And I
2   would suggest that he did not arrange any of these
3   transactions. The testimony was consistent that Giargiari
4   or Soldicich would call the pager. It was Jose Medina that
5   responded to the pager or delivered the drugs. He was not
6   that type of person who arranged.
7        Further, there was no testimony that -- and I
8   think, again, the government misstates what the trial
9   evidence was.
10       There was no testimony or evidence that he paid
11  Josue Vazquez or that he paid Jose Ortiz or that he paid
12  Junior Carmona. There was just no testimony as to that,
13  your Honor.
14       There was no testimony that he arranged those
15  transactions. There was no testimony that he even acted as
16  a middle person between other people as an arranger. He was
17  just -- none of that testimony in this case.
18       He is really a minimal participant. And if he were
19  not a minimal participant, he should at least get a minus
20  three and between minimal and minor.
21       And if you look -- also, I think at the very least,
22  he should get a minor. And I cited a case in my
23  supplemental memo which is the DiMarzo case, your Honor.
24  And in that particular case, it was two brothers and the
25  First Circuit was faced with this very question that is

Page 24

1   presented to this Court. And the DiMarzo case, a brother --
2   the brother actually drove the negotiating brother to the
3   scene of the transaction -- this is on Page 5 of my
4   supplemental memorandum -- and then stayed in the parking
5   lot, acted as a lookout. The other brother went to the
6   agent, negotiated, waited for the courier.
7        The driver brother also rented a room to overlook
8   the parking lot to be as a lookout. And in that particular
9   case, the district court provided a minus two role reduction
10  and he was sustained.
11       He had argued that it should have been a minimum
12  role reduction, and the First Circuit stated that the
13  district court was correct.
14       So I think in this particular case, he was not a
15  lookout. He didn't fit any of the things that what even the
16  defendant in the DiMarzo case did, he was. I think that
17  as a result of that, he should get at least a three -- I get
18  at least a three or four, your Honor, as a role reduction.
19       THE COURT: Ms. Brieger.
20       MS. BRIEGER: Your Honor, I have -- again,
21  this is something that was addressed in our sentencing memo.
22       I think that the trial evidence here is that
23  Mr. Otoniel Medina was second banana to his brother.
24  There's no question about that. The fact that he was second
25  banana to his brother, however, doesn't automatically make

Page 25

1   him a minor participant or even a minimal participant,
2   particularly when you look at the nature of the activity
3   they were both engaged in.
4        And whenever a defense lawyer suggests that I have
5   misstated the evidence, that is a serious accusation, and I
6   want to make clear that the government did not misstate the
7   evidence; that Mr. Otoniel Medina did, in fact, take money
8   from workers and did give drugs to workers and did pay
9   others.
10       And if the Court looks at the testimony offered by
11  Josue Vazquez on April 10, the question was:
12       Did you ever get cocaine from anyone else?
13       Yes, two or three times from his brother, Oto
14  Medina.
15       Can you describe those situations?
16       Jose Medina was either out of town -- Jose Medina
17  was out of town and his brother, his brother would just tell
18  me where to go and how much to deliver.
19       A few questions later:
20       What did you do with the money on those occasions?
21       Brang it right back to the house.
22       And who did you give it to?
23       Oto Medina.
24       Mr. Jose Ortiz testified to exactly the same thing.
25       He was asked:

Page 30

1  when his brother went to these various drug transactions was
2  he could be there, he could be with his older brother. That
3  was the only benefit.
4         He did not receive any monetary benefits -- this is
5  Page 3, the last paragraph -- at all. There was no
6  splitting of huge profits. I would suggest that the
7  government is asking this Court really to speculate where
8  there's no evidence in order to draw that reasonable
9  inference that there were huge profits or that both brothers
10 split any of these profits between themselves, your Honor.
11        And I would also ask the Court to review that
12 proffer statement in light of his role reduction and
13 consider that because basically after September '98, he was
14 not part of anything. And I think, you know, that's why you
15 didn't hear about him at all. With respect to the testimony
16 of Josue Vazquez, Mr. Medina would suggest it's not truthful
17 at all. He lied or he was inconsistent in many respects
18 with other witnesses.
19        He did not state that he was working with Howie
20 during the relevant times here. He denied that he knew this
21 person named Howie.
22        Jose Ortiz in his testimony, your Honor, stated
23 that, in fact, Junior -- Josue Vazquez had been living down
24 in Rhode Island, and Mr. Vazquez denied that. He denied he
25 knew this person named Howie.

Page 31

1         In Mr. Otoniel Medina's safety valve statement, he
2  states the role of Josue Vazquez on Page 2, your Honor, and
3  Josue Vazquez told him directly that he was -- he had been
4  working down in Rhode Island for four to six months and that
5  he had been stopped -- for Howie -- and that he had been
6  stopped by the police on two occasions. And that's why he
7  came back to Massachusetts, and that's why he hooked up with
8  Jose Medina.
9         When Josue Vazquez was in the picture, obviously
10 there was no need for Otoniel Medina to be in the picture at
11 all, and that's what happened, your Honor. He was not in
12 the picture at that point in time. He was not there in
13 December when this alleged transaction happened.
14        Josue Vazquez even testified that the December 9
15 transaction of the quarter kilo, Otoniel Medina was not
16 present. He was present with Jose Medina.
17        So it is consistent with what Otoniel Medina is
18 proffering to this Court under the safety valve, that he, in
19 fact, did leave this conspiracy in September of 1998.
20        And if you look at Josue Vazquez's testimony, he
21 said he worked with Jose Medina from September '98 through
22 December '98. So that is consistent, your Honor, that is
23 consistent, and it is the truth.
24        Mr. Vazquez is not telling the truth to this Court,
25 your Honor.

Page 32

1              THE COURT: Well, okay.
2              MS. BRIEGER: Briefly, your Honor, it's
3  critical that Josue Vazquez's testimony that he worked for
4  Jose Medina from September of 1998 until December of 1998,
5  four months -- during those four months, Otoniel Medina was
6  involved with his brother, paid Josue on several occasions
7  and collected proceeds of the transactions.
8         When Mr. Josue Vazquez left the conspiracy in
9  December of 1998, it is also fair to assume that the vacancy
10 was filled by Oto Medina. And, in fact, who is it that has
11 a kilo of cocaine in his hands on March 30 but Oto Medina.
12        So it's really a fantasy to suggest that Otoniel
13 Medina had withdrawn from the conspiracy as of
14 September 1998.
15             THE COURT: Okay.
16        To resolve the fact issue, based on the evidence at
17 the trial, I would find, and I do find, that Oto Medina was
18 an active and regular participant in the conspiracy and the
19 work of the conspiracy, even though, as the government has
20 pointed out, to a lesser prominence, perhaps, in the
21 activity of conspiracy than his brother was but
22 certainly an active and regular participant.
23        And even if there were periods of his inactivity,
24 there is no doubt he was present at the end, as well as
25 toward the beginning, because he was an active participant

Page 33

1  in the events of March 30 as anybody.
2         Certainly with respect to the focus on that event,
3  he was not a minor participant. I think that's the event --
4  I don't have the indictment in front of me, but I believe
5  that's the end charge in Count 2 of the indictment.
6         So with respect to that -- so I don't think the
7  enhancement -- the reduction for a minor role is appropriate
8  in this case.
9         Let me just say I think the summary of the activity
10 of the offense that's contained in the presentence report is
11 accurate.
12        I have one very minor question about it, which I
13 think is immaterial in light of the general findings, but
14 let me just ask, particularly Ms. Brieger, if you would look
15 at Paragraph 7 of the presentence report, Page 5 --
16             MS. BRIEGER: Yes, your Honor.
17             THE COURT: -- which includes Otoniel Medina
18 at the Hoyts Cinema on the 9th, was there evidence to that
19 effect? I don't remember.
20             MS. BRIEGER: There was evidence, your Honor.
21 The evidence was from Josue Vazquez that Otoniel Medina was
22 there with him. And I believe there was evidence from
23 Edward Giargiari that he couldn't remember -- oh, I'm sorry.
24        Giargiari testified on April 5 in response to a
25 question: Did you meet at Hoyts Cinema?

Page 38

1  get the two points which would bring the range below the
2  five -- okay. I think it is not appropriate to invoke the
3  safety valve provision for Mr. Otoniel Medina.
4        Okay. Now, I think that brings us to the final
5  issues of what the proposed sentence -- what the recommended
6  sentences are from the various parties. And I know Mr. Yee
7  has a request for a departure which I'll hear as part of the
8  presentation of what the sentence ought to be, so let me
9  hear first from the government as to its recommendations in
10  each case.
11        MS. BRIEGER: Your Honor, with respect to the
12  defendant Otoniel Medina, the government, in recognition of
13  the guideline ranges that the Court has found, suggests that
14  he be sentenced at the low end of the applicable guideline
15  range, which I believe is 63 months, and a five-year term of
16  supervised release and leave the fine to the discretion of
17  the Court based on the information in the presentence
18  report.
19        THE COURT: And with respect to Jose Medina?
20        MS. BRIEGER: With respect to Jose Medina,
21  your Honor, again, in recognition of the findings that the
22  Court has made on the guideline ranges, and, again, in
23  respect for the quantity of time involved here, I think that
24  it should be clear that the government's recommendation is
25  one which is fair and just and is arrived at after taking

Page 39

1  the most conservative calculations possible and suggesting
2  the most conservative calculations to the Court, that he be
3  sentenced at the low end of his applicable guideline range
4  which is 121 months and at least a five-year term of
5  supervised release, a fine left to the discretion of the
6  Court and payment of the mandatory special assessment. Of
7  course that applies to Otoniel Medina as well.
8        THE COURT: Mr. Haley.
9        MR. HALEY: If I might, your Honor.
10        Your Honor, clearly Jose, Jose Medina is facing a
11  very significant sentence based on the base offense level of
12  32. I would suggest, your Honor, that the sentence serves a
13  dual purpose. It serves to punish and it serves, hopefully,
14  to rehabilitate.
15        Certainly, your Honor, if you look out in the
16  courtroom today, he's got a tremendous support structure.
17  He's got family and he's got friends and he's got clergy who
18  care very deeply about him, who will stick with him
19  through this and through the years that he's incarcerated.
20        I would ask your Honor to go along with the
21  government's recommendation at the low end.
22        Your Honor, he developed a drug problem with
23  marijuana sometime in his early teen years and somehow kept
24  going on a left-turn direction with regard to drugs.
25  Certainly drugs have affected his life and have affected the

Page 40

1  lives of his family and friends who are in the courtroom
2  with him here today.
3        I ask your Honor to take this into consideration,
4  and I would ask your Honor to specifically in the sentencing
5  order recommend his participation in the 500-hour drug
6  program. And I would ask your Honor in light of the fact
7  that his family is in the Framingham, Massachusetts, area
8  that he -- that a recommendation be made that he be sent to
9  Fort Devens, Massachusetts.
10        Thank you.
11        THE COURT: Mr. Medina himself has the
12  opportunity to say something if he wishes. You don't have
13  to if you don't want to.
14        MR. HALEY: He does not wish to, your Honor.
15        THE COURT: All right.
16        Mr. Yee, then, on behalf of Otoniel Medina.
17        MR. YEE: Although I didn't argue the safety
18  valve, I object to the Court's ruling.
19        THE COURT: Okay.
20        MR. YEE: And save Mr. Medina's rights.
21  With respect to --
22        THE COURT: I think it was -- let me just note
23  I think it was adequately presented in the papers to
24  preserve any rights, but if it wasn't your rights are saved.
25        MR. YEE: Thank you very much, your Honor.

Page 41

1        I think Apprendi still applies, your Honor, because
2  we have requested a downward departure under 5K2.0 for
3  aberrant behavior and we supplied -- there's probably at
4  least 30 pages of letters and petitions that were submitted
5  to the Probation Department when the probation report was
6  made, and there were people who -- family members, people
7  who are friends, who are acquaintances, who are church
8  members, who have known Otoniel Medina and also Jose Medina
9  for substantial periods of time, and there are people who
10  have known these two young men for 13 years, nine years, and
11  the like, your Honor.
12        I think that -- I think the -- these letters and
13  petitions and the like really support a particular argument,
14  his contention that it is aberrant behavior in this
15  particular instance and it was a marked departure from the
16  past and that it's not likely to occur in the future.
17        If you look at some of the recommendations, some of
18  the letters about Otoniel Medina, such as Igdalia Galvis,
19  that's his sister, she says, My brother has made some
20  mistakes in his life but has learned the consequences of it.
21  Oto Medina has changed a great deal.
22        If you look at Antonio Ortiz's letter dated May 11,
23  2000, he's known both of them for several years. He stated
24  that Oto Medina was always the quiet one.
25        If you look at Iliana Delgado's, dated May 15,

Page 46

1  opportunity to make a statement before sentence is imposed,
2  if you wish. You don't have to if you don't want to.
3          DEFENDANT OTONIEL MEDINA: Thank you, your
4  Honor.
5          THE COURT: Do you want to respond to the
6  departure argument?
7          MS. BRIEGER: I would, and I'll make it very
8  brief, your Honor.
9          Mr. Haley mentioned that Congress's drug sentencing
10  scheme is designed to both punish and rehabilitate, but what
11  he didn't mention is that it's also designed to deter crime
12  by others.
13          And it's critical that despite this remarkable
14  outpouring by this number of people who've come to show
15  their support for these defendants, that they realize that
16  people like Janine Soldidich, Josue Vazquez, Eddie
17  Ciargiari, Jose Ortiz, all of whose lives have been
18  affected, "left-turned," as Mr. Yee would say, by conduct of
19  these two defendants. Those are four out of innumerable
20  defendants -- innumerable people whom these defendants sold
21  cocaine to who are not here today and cannot speak for the
22  harm that has been caused in their individual lives.
23          And I hope on behalf of the government that
24  whatever sentence this Court imposes, that it sends to all
25  of the people who live in the metrowest region a message

Page 47

1  that they should think not once, not twice, but three times,
2  at least, before they buy or sell or use drugs.
3          And I think that it's critical that that is part of
4  what the government is doing, and it's the part of what
5  Congress intended the government to do in enforcing the drug
6  laws.
7          THE COURT: Well, I decline to depart from the
8  sentencing guideline range because I do not think that the
9  case qualifies for the aberrant behavior ground or any other
10  ground that occurs to me.
11          I do want to make it clear that my declining to
12  depart is not based on the existence of a mandatory minimum
13  which would interfere with that but on the ground that there
14  is not a satisfactory reason under 5k2 to depart.
15          Otherwise, I think it is appropriate to impose
16  sentences in each case at the low end of the guideline
17  range. The guidelines require me to state when the range is
18  greater than 24 months the reason for locating it outside or
19  where in the range I'm locating it, and that applied to the
20  sentence for Jose Medina, and I think that in the case a
21  sentence at the low end, which is slightly in excess of ten
22  years, is, under all the circumstances, an appropriate
23  sentence and more need not be imposed.
24          So first Jose Medina, if you'd stand, please.
25          Upon your conviction of these offenses, and

Page 48

1  pursuant to the Sentencing Reform Act of 1984, it is the
2  judgment of the Court that you, Jose Medina, be and you
3  hereby are, committed to the custody of the Bureau of
4  Prisons to be imprisoned for a term of 121 months. The term
5  consists of terms of 48 months on each of Counts 3 and 4 and
6  121 months on Counts 1, 2 and 5, all terms to be served
7  concurrently.
8          Upon your release from imprisonment, you shall be
9  placed on supervised release for a term of four years.
10  Again, this consists of terms of four years on Counts 1, 2
11  and 5, and terms of one year on Counts 1, 3 and 4, all to be
12  served concurrently.
13          Within 72 hours of your release from the custody of
14  the Bureau of Prisons, you shall report in person to the
15  district to which you've been released.
16          While you're on supervised release, you shall not
17  commit any other federal, state or local crime.
18          You shall refrain from the unlawful use of any
19  controlled substance and in that respect shall submit to one
20  drug test within 15 days of your release. And at least two
21  periodic drug tests thereafter, as may be directed by the
22  Probation Office.
23          You shall comply with the standard conditions for
24  supervised release prescribed in the sentencing guidelines
25  at Section 5D1.3(c) and in addition the following special

Page 49

1  conditions:
2          You are prohibited from possessing a firearm or
3  other dangerous weapon;
4          you shall participate in any program for substance
5  abuse that may be directed by the Probation Office, which
6  program may include random testing to determine whether you
7  have reverted to the use or abuse of alcohol or drugs;
8          you shall be required to contribute to the costs of
9  services for such treatment based on your ability to pay or
10  based upon the availability of third-party payment.
11          In view of the financial circumstances as reported
12  in the presentence report, I will impose no monetary fine.
13          There is a special assessment for $100 for each of
14  the counts of conviction for a total of $500.
15          I will add a judicial recommendation to the Bureau
16  of Prisons that the defendant be considered for the 500-hour
17  drug program. And I will recommend, particularly in light
18  of the obvious close ties with family members, that he be
19  housed as close to the family as may be consistent with the
20  Bureau policies.
21          MR. HALEY: Thank you, your Honor.
22          THE CLERK: Mr. Jose Medina, the Court hereby
23  notifies you of your right to an appeal. If you are unable
24  to pay the cost of an appeal, you may apply to the Court to
25  allow you to appeal without paying cost.

Multi-Page™

C E R T I F I C A T E

I, Jill K. Ruggieri, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.

JILL K. RUGGIERI, CSR, RPR, RMR, FCRR, CRR

Official Court Reporter

1 Courthouse Way, Suite 3510

Boston, Massachusetts 02210

(617) 428-0011

recovered cocaine."  83 F.3d at 493.

Finally, here, yet again as in *Jiminez Martinez,* the district court failed to articulate any reason why it concluded that the debriefing report was reliable.  Or, for that matter, as we have seen, pp. 11-12, *supra,* whether it relied on it at all. Thus, it failed to comply with the statutory injunction that it "state in open court the reasons for its imposition of the particular sentence...."  18 U.S.C. 3553(c).

As this Court said in *Sepulveda, supra,* although the Government need only prove drug quantity by a preponderance of the evidence, that burden

> "must be sedulously enforce[d] ... for under the guidelines, drug quantity has a dramatic leveraging effect.... relatively small quantitative differences may produce markedly different periods of immurement."  15 F.3d at 1198.

Here, the result of the district court's acceptance of the debriefing report at face value -- which, at best, is what it did -- resulted in Medina's becoming vulnerable to the 121 months of incarceration he received, as compared to the 79-87 months he would have been exposed to otherwise.  U.S.S.G. Chapter 5, Part A (sentencing table).

III.    THE FAILURE OF DEFENDANT'S COUNSEL AT SENTENCING TO CHALLENGE THE DEBRIEFING REPORT ON THE ISSUE OF DRUG QUANTITY DENIED HIM THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION

Standard of Review

This Court has determined that the issue of effectiveness of

14

And, further, that "[Gargiari's] trial testimony was consistent with the evidence that he gave the agent immediately in December when he was arrested." TR (sentencing), at 5; Addendum, at 7.

Not until the following exchange did the Government concede that none of this was true:

"THE COURT: Did Mr. Gargiari testify at trial to the quantities that are in the memo, all of them?
"Ms. Brieger:  I believe --
"THE COURT: In particular, for example, the -- set forth in Paragraph 3 and maybe Paragraph 4, as well.
"Ms. Brieger:  I don't think he did your Honor, because I think we offered testimony primarily forward from December 9, although Mr. Gargiari did testify that he had been a regular cocaine customer of Mr. Medina...." TR (sentencing), at 6; Addendum, at 8.

The Government then stated that it had Gargiari available to testify at sentencing and that it was "absolutely" confident he would testify consistently with the debriefing report and sentencing memorandum.

Asked to respond to this crucial exchange between the district court and the Government, which exposed the Government as first overreaching in its assertions regarding the evidence at trial and then correcting itself, Medina's counsel, who did not represent him at trial, countered feebly: Gargiari's trial testimony, he said, was that Medina "was around very little" during the two year period in question, "and there was other testimony that he was out of state. He was in Florida." TR (sentencing), at 7; Addendum, at 8.

This was untrue: Gargiari never testified about Medina's whereabouts, let alone that he was around very little. Another Government witness, Jose Ortiz, did testify that Medina was in

16

whether counsel fell short of that standard:

> "First, the defendant must show that counsel's performance
> was deficient....  Second, the defendant must show that the
> deficient performance prejudiced the defense."  466 U.S. at
> 687.

Judge Selya's opinion in *Scarpa, supra*, 38 F.3d at 10,
wherein defense counsel demonstrated his lack of understanding of
the elements of the offenses with which his client was charged,
and of the recognized defenses thereto, is apposite here:

> "Unless counsel brings these rudiments to the table, a
> defendant likely will be deprived of a fair 'opportunity to
> meet the case of the prosecution,'" citing *Strickland*,
> *supra, inter alia*, 466 U.S. at 685, "and, thus, will be
> placed at undue risk of having no effective advocate for
> his cause.  Phrased another way, if an attorney does not
> grasp the basics of the charges and the potential defenses
> to them, an accused may well be stripped of the very means
> that are essential to subject the prosecution's case to
> adversarial testing."

Here Medina's counsel at sentencing revealed to prosecutor
and judge alike, both of whom attended the trial, that he had not
made the effort to grasp the real thrust of the evidence at
trial, as it affected his client.  Lacking an understanding of
the evidence, it is not surprising that he declined the
opportunity to cross-examine Gargiari.

Medina's counsel's failure to cross-examine Gargiari on the
contradictions between his testimony at trial and the report of
his debriefing was unjustifiable on any imaginable tactical
ground and sufficed to undermine confidence that the outcome of
Medina's sentencing was fair and just

After the interchange described above, the district court
informed Medina's counsel that it considered the debriefing

in the report occurred?  During a two or three month period in
the fall of 1996?  Or the fall of 1998?  Both hypotheses are
problematic.  If Gargiari said all of this happened in 1996, how
explain the large gap between 1996 and the controlled buys of
1998?  On the other hand, if the year is 1998, the contradiction
between Gargiari's trial testimony that he had only been buying
small quantities for his own use from Medina and the reported
large purchases is even more glaring.  And, phrases such as "on
up to 4 ounces," "on four to six occasions," "on six to eight
occasions," cry out for cross-examination.  When?  Where?  With
whom?  For how much?  In the morning or the afternoon?  Etc.,
etc.

As this Court held in *United States v. Ademaj*, 170 F.3d 58,
62 (1st Cir. 1999), citing and quoting *Scarpa, supra*, 38 F.3d at
12, denying Medina his right to have the Government's chief
witness on the subject of drug quantity -- Gargiari -- cross-
examined, falls into the category of one of those rare instances
where the Court will presume prejudice to the defendant.

But we need not subject ourselves to such a demanding test.
As this Court said in *Gonzalez-Soberal v. United States*, 244 F.3d
273, 278 (1st Cir. 2001), citing *Strickland*:

> "prejudice exists in a particular case when there is 'a
> reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would
> have been different.' *Strickland*, 466 U.S. at 694, 104
> S.Ct. 2052. A reasonable probability is one 'sufficient to
> undermine confidence in the outcome.' *Id.* On one end, it
> is not enough to show that the errors had 'some conceivable
> effect on the outcome.' *Id*, at 693, 104 S.Ct. 2052. Nor
> is it required, however, that the defendant prove that the
> errors were more likely than not to have affected the